# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| GREGORY R. FINCH, II, | : Case No. 3:16-cv-00241 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# DECISION AND ENTRY

## I.

Plaintiff Gregory R. Finch served on active duty in the United States Marine Corps from 1987 to 1996. His service included combat duty in Iraq and Somalia. After his honorable discharge, he was employed mainly with mortgage loan institutions. He also served 6 years in the Army Reserve. He resigned from his last job in June 2011 due to nausea, vomiting, and abdominal pain. He has since been diagnosed with many health problems including post-traumatic stress disorder (PTSD), gastro-esophageal reflux disease, gastroesophageal reflux disease (GERD), ulcerative esophagitis, osteopenia, obstructive sleep apnea, and bilateral knee and shoulder pain.

Plaintiff applied for Disability Insurance Benefits alleging that he was under a disability that started on June 20, 2011. The Social Security Administration denied his

application based the decision of Administrative Law Judge (ALJ) Elizabeth Motta, who concluded that Plaintiff was not under a disability.

Plaintiff brings the present case challenging ALJ Motta's non-disability decision raising various contentions and seeking, at a minimum, a remand for further proceedings. Plaintiff's first asserted reason for remand is that ALJ Motta failed to properly evaluate the opinions provided by his treating psychologist, Roger G. Schmidt. Dr. Schmidt believed that Plaintiff could not work on a sustained basis in a competitive work environment.

The Commissioner finds no error in the ALJ's decision and contends that substantial evidence supports it. The Commissioner therefore asks the Court to affirm the ALJ's non-disability decision.

**II.**

Plaintiff graduated from high school and has had "some college." (Doc. #5, *PageID* #72). After leaving active duty, he worked as an assistant manager, loan officer, and financial institution manager, all sedentary-work jobs as he performed them. *Id*. at 61.

ALJ Motta held an administrative hearing during which Plaintiff testified. At that time, he was 44 years old and thus considered to be a younger person under social security law. Plaintiff testified that he has PTSD (with related nightmares) and obstructive sleep apnea. He gets "highly irritable." *Id*. at 74. He has difficulty perceiving things as they really are. This has caused him to have arguments with

coworkers and managers. *Id*. at 74-75, 81. He has not been fired from a job because he always quit before he was fired. He added, "I've known it was coming." *Id*. at 75.

Plaintiff testified that he has never been psychiatrically hospitalized. His medication for PTSD sometimes help and sometimes doesn't. He explained, "I have a tendency to want to … kill myself" as a side effect from the prescribed medication. *Id*. at 76. His physicians have therefore switched his medications. He noted, "I've taken about every medication they've got." *Id*.

Plaintiff also testified that he has stomach issues that involve vomiting, GERD, and ulceritis or esophagitis. *Id*. at 81. He takes medication that lowers the frequency of his vomiting to about 2 or 3 times a week. A lot of his vomiting stopped after he had his liver resected (he had a benign lesion removed) and his gall bladder removed. *Id*. at 75, 81.

Plaintiff's daily activities do not involve chores or yard work because he tires easily. *Id*. at 77. The only place he goes on a regular basis is to play golf 3 to 5 times a week. *Id*. Plaintiff explained that his psychologist wants him to play golf as part of his therapy. *Id*. at 83. He attends his children's extracurricular sports activities. He had stopped coaching his teenager's cross-country team and was no longer significantly involved in coaching his other children's T-ball teams. He sometimes uses a computer to look up news, and he reads book or magazines when something catches his interest. *Id*. at 79. He eats out with his family once a month. He does not visit friends. He accompanies his wife to the store but she takes care of all the shopping.

Plaintiff receives medical care from the Veterans Administration. He received VA disability benefits based on its initial conclusion that he has one or more service-connected disabilities that render him 70% disabled. The VA later determined, in March 2015, that he was 100% disabled. *Id*. at 83, 1209.

Plaintiff's medical records document many years of mental-health and other medical treatment at the VA. He began treatment for his mental-health problems in December 2011 when he was diagnosed with major depressive disorder, recurrent, and PTSD. *Id*. at 653. He continued treatment thereafter including various prescription medications. (Doc. #8, *PageID* #s 1318-19 (and records cited therein)).

In April 2014, Dr. Schmidt assessed Plaintiff and diagnosed PTSD. (Doc. #5, *PageID* #s 653, 1206). He wrote a letter in March 2015 stating that he had provided therapeutic services to Plaintiff at least once a month since April 2014. He explained that Plaintiff had developed PTSD due to "his traumatic combat exposure." *Id*. at 1206. He also explained, "We have recently started trauma-focused therapy to address particularly stubborn (and longstanding) symptoms…. His most problematic symptom difficulties relate to extreme (periodic) physiological arousal, restricted range of emotional expression, irritability and anger problems, hyper-vigilance, and significant sleep problems (particularly intense, recurrent nightmares)…." *Id*. Dr. Schmidt continued, "His current symptomology is clearly interfering with his ability to function at home, in the community, or in any occupational/vocational setting. Currently, he does not seem able to obtain or maintain gainful employment in a traditional, competitive work

environment due to the severity of his PTSD symptom experiences. My opinion at this time is that Mr. Finch is unemployable." *Id*. at 1207.

In January 2015, psychologist Michelle R. Maegly, Psy.D., examined Plaintiff and completed a VA PTSD Disability Benefits Questionnaire. *Id*. at 1302-09. She opined that Plaintiff's "mental condition appears to render him unable to obtain or maintain gainful employment." *Id*. at 1308. Dr. Maegly observed that Plaintiff's primary symptoms include recurrent intrusive distressing memories of traumatic events, nightmares, depression with decreased interest, hypervigilance, exaggerated startle response, sleep disturbance, anxiety, chronic sleep impairment, and decreased impulse control with increased irritability. *Id*. at 1305-07. His affect was flat and his judgment was impaired. *Id*. at 1307.

In February 2015, psychologist Karen Voyten, Ph.D., reviewed the record at the state agency's request. She concluded, "The totality of the evidence does not reflect marked psych-related impairments." *Id*. at 162. He was moderately impaired in his ability to perform several mental work-related activities including the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday without interruptions from psychological symptoms. He could, according to Dr. Voyten, perform routine 2-step tasks, and he "may work best alone or in a small, familiar group." *Id*. at 161-62. Leslie Rudy, Ph.D., reviewed the evidence in May 2016 and affirmed Dr. Voyten's opinions. *Id*. at 170-71.

5

**III.**

An individual is eligible for Disability Insurance Benefits when he or she is under a disability (among other requirements). 42 U.S.C. § 423(a)(1)(E). The Social Security Act narrowly views the term "disability": A person is under a disability only when their physical or mental impairments are of such severity that they (1) cannot do their previous work, and (2) cannot, "considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

As indicated previously, it fell to ALJ Motta to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five well-known sequential steps described by the regulations. *See* 20 C.F.R. § 404.1520(a)(4); *see also Rabbers*, 582 F.3d at 652.

Moving through some initial findings, the ALJ reached steps two and three where she found that Plaintiff's severe impairments—"posttraumatic stress disorder, cervical spine degenerative disc disease, obstructive sleep apnea, obesity, esophagitis, and right-shoulder tendonitis"—did not automatically qualify him for benefits. (Doc. #5, *PageID* #s 49-50). At step four, the ALJ found that Plaintiff could perform light work as follows:[1]

---

[1] The Social Security Administration refers to what a person can do as his or her "residual functional capacity." *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> lifting and carrying up to 20 pounds occasionally and 10 pounds
> frequently; only occasional postural activities, such as climbing stairs,
> ramps, balancing, stooping, kneeling, crouching or crawling; no
> climbing ladders, ropes, or scaffolds; no exposure to hazards, such as
> dangerous machinery or working at unprotected heights; only
> occasional overhead reaching bilaterally; simple, repetitive tasks; only
> occasional contact with coworkers, supervisors, and the public; and
> low stress work with no strict production quotas or fast pace and only
> routine work with few changes in the work setting.

*Id*. at 52.

Plaintiff's limited abilities, according to ALJ Motta, prevented him from being able to perform his past work but did not prevent him from performing a significant number of available jobs, such as marker, inspector, and routing clerk. *Id*. at 62. This meant that he was not under a disability and not entitled to benefits. *Id*.

The present review of ALJ Motta's decision determines whether she applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If she failed to apply the correct legal criteria, her decision may be fatally flawed even if the record contains substantial evidence supporting her findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

**IV.**

Plaintiff contends that the ALJ should have placed controlling weight on Dr. Schmidt's opinions under the treating physician rule because his own clinical findings support his opinions, which are consistent with the remainder of the record. Plaintiff further asserts that even if Dr. Schmidt's opinions did not deserved controlling weight, his opinions should have been given deferential weight under the remaining regulatory factors.

The Commissioner argues that the ALJ provided good reasons for discrediting Dr. Schmidt's opinions by finding that his opinions were inconsistent with clinical findings, with his own treatment notes, and with Plaintiff's daily activities. According to the Commissioner, the ALJ correctly found that the mental-status examination performed by several different psychiatrists and psychologists had been generally unremarkable and his symptoms with generally well managed with medication. The Commissioner concludes that the ALJ's weighing of Dr. Schmidt's opinions was reasonable and proper under the Regulations.

The treating physician rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

An ALJ must provide "good reasons" for the weight he or she places upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Motta evaluated Dr. Schmidt's opinions as follows:

> I find that Dr. Schmidt's opinions are not entitled to controlling or deferential weight under the regulations, as they are not fully supported by the record. An opinion that the claimant did not "seem to be able" to engage in gainful employment is equivocal and not a clear indication of disability. Moreover, a finding that the claimant was unable to function at home, in the community or in an occupational setting is not consistent with his active lifestyle golfing, coaching ball for his children, and doing tai chi. Dr. Schmidt's records demonstrate only mild to moderate symptomatology and are not consistent with his opinions in the medical source statement. However, significant weight is given to Dr. Schmidt's statement, to

> the extent it reflects a need for limitations in work activity. As to the
> issue of disability, little weight is given.

(Doc. #5, *PageID* #60).

There are multiple problems with the ALJ's reasons for rejecting Dr. Schmidt's opinions. They begin with an error of law in the ALJ's finding that Dr. Schmidt's opinions are not "fully supported by the record." This finding reveals that the ALJ reviewed Dr. Schmidt's opinions under a higher legal standard than the standard mandated by the Regulations. "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is *not necessary* that the opinion be *fully supported* by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (emphasis added). Given this instruction, the ALJ applied incorrect legal criteria by declining to place controlling weight on Dr. Schmidt's opinions for the reason it was not fully supported by the record. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2).

If, moreover, the ALJ discounted Dr. Schmidt's opinions under the "supportability" factor, this too was error. Neither the supportability factor nor any other regulatory factor permitted the ALJ to reject Dr. Schmidt's opinions by characterizing them as not **fully** supported by the record. Instead, the regulations speak in relative—not absolute—terms. The supportability factor, for instance, provides, "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3) (emphasis added).

10

The ALJ also unreasonably found "equivocal" Dr. Schmidt's statement that Plaintiff "does not seem to be able …" to get or keep a job due to his "PTSD symptoms experiences." (Doc. #5, *PageID* #60). When read in context, this statement is not equivocal because it is followed immediately by Dr. Schmidt's plainly phrased opinion that Plaintiff is unemployable at this time. *Id*. at 1207. The Commissioner contends that the ALJ properly gave little weight Dr. Schmidt's opinion that Plaintiff was unemployable because this opinion invaded the ultimate disability issue reserved to the Commissioner. It is correct to say that the question of whether an individual is under a disability rests with the Commissioner. *See* 20 C.F.R. § 404.1527(d). But, the fact that Dr. Schmidt expressed such an opinion is not a valid reason to reject the opinion. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e), did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions]."). Additionally, Dr. Schmidt's opinion letter was significantly more detailed than simply providing a conclusory opinion about Plaintiff's ability to work. For these reasons, the Commissioner's reliance on the fact that the ultimate disability determination is reserved to the Commissioner is not a valid basis for affirming the ALJ's evaluation of Dr. Schmidt's opinions.

The ALJ also erred by incorrectly recasting Dr. Schmidt's opinions. The ALJ wrote that Dr. Schmidt believed Plaintiff was unable to function at home or in the community. *Id*. at 60. But Dr. Schmidt did not speak in absolutes. He instead reported that Plaintiff "continues to experience challenges and difficulties in familial and relationship functioning, occupational/vocational pursuits, social relationships, and overall PTSD symptom management." *Id*. By inaccurately recasting Dr. Schmidt's opinion as an absolute—*i.e.*, Plaintiff is "unable to function" in these areas—the ALJ created a straw man. It was then easy for the ALJ to knock down this straw man by criticizing Dr. Schmidt's opinion that Plaintiff was "unable to function" in these areas as inconsistent with his daily activities. This straw-man reasoning fails to logically support the ALJ's decision to place little weight on Dr. Schmidt's opinions.

The Commissioner contends that the ALJ properly concluded that Dr. Schmidt's unremarkable findings and records reflect that Plaintiff's symptoms were well-managed with medications. Yet, many of the Commissioner's supporting citations refer to medical records concerning Plaintiff's physical health problems and are not inconsistent with the symptoms and problems Dr. Schmidt identified in his letter. *Id*. at 387, 398-99, 418-19, 490, 504, 534-36, 743-44, 774, 788. The ALJ, moreover, neither cited nor discussed the records he relied on to show only mild or moderate symptoms when discussing Dr. Schmidt's opinions. *Id*. at 60; *see Gayheart*, 710 F.3d at 377 (criticizing an ALJ's decision for not identifying substantial evidence that is inconsistent with the treating source's opinions); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency, any more than we can uphold a

decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Such a discussion or, at a minimum, citations to the records on which he relied, was needed because her other reasons for discounting Dr. Schmidt's opinions were fatally flawed.

Turning to other medical sources, Plaintiff contends that the ALJ credited the opinions of non-examining state-agency psychologists, Drs. Voyten and Rudy, without evaluating their opinions as the Regulations require.

The ALJ concluded that the opinions of Drs. Voyten and Rudy were due substantial weight "as they are generally consistent with the objective evidence." (Doc. #5, *PageID* #59). While this refers to the consistency factor, the ALJ engaged in no further inquiry or explanation for crediting the opinions of these record-reviewing psychologists over the opinions of Plaintiff's treating psychologist, Dr. Schmidt. Such was necessary in light of the detailed explanation Dr. Schmidt provided in support of his opinions.

Additionally, "[t]he source of the opinion therefore dictates the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376. "'The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Id*. at 375 (quoting Soc. Sec. R. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Rather than implementing a more rigorous test to either Dr. Voyten's or Dr. Rudy's opinions, the ALJ referenced a single regulatory factor. In contrast, the ALJ weighed Dr. Schmidt's opinion with much greater

attention to detail. "[T]he regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite." *Gayheart*, 710 F.3d at 374.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## V.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

14

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, an ALJ should be directed to evaluate the evidence of record, including Dr. Schmidt's opinions and the other evidence of record, under the legal criteria mandated by the Commissioner's Regulations and Rulings, and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Gregory R. Finch, II was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

September 22, 2017                          *s/Sharon L. Ovington*
                                                           Sharon L. Ovington
                                                           United States Magistrate Judge